UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

JEFFERY W. POTTER,                                    Case No. 7-05-14071-TRC

      Debtor.

YVETTE GONZALES, TRUSTEE,

      Plaintiff,

v.                                                    Adv. No. 11-1175-TRC

LA VISTA HOMEOWNERS' ASSOCIATION;
BANK OF AMERICA, N.A.; WELLS FARGO
BANK NEW MEXICO, INC.; O'REILLY AND
DOHERTY, LLP; ROBERT ENGEL; and
MARTIN S . FRIEDLANDER,

      Defendants.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MARTIN S. FRIEDLANDER

Before the Court is the Motion for Summary Judgment (Docket Entry 96) filed by Plaintiff

Yvette Gonzales, Chapter 7 Trustee ("Plaintiff") against Defendant Martin S. Friedlander

("Friedlander"), Friedlander's Response (Docket Entry 108), and Plaintiff's Reply (Docket Entry

109). Having reviewed the briefs and arguments of the parties and the applicable law, the Court

finds good cause to grant Plaintiff's Motion. This Memorandum Opinion shall constitute the Court's

findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

### JURISDICTION

Plaintiff filed this adversary proceeding to determine the validity, extent, and priority of

various liens claimed on the proceeds of the sale of Debtor Jeffrey Potter's real property known as

53 La Vista, Santa Fe, New Mexico ("53 La Vista"). She also seeks a declaratory judgment pursuant

to 28 U.S.C. §§ 2201 and 2202. Friedlander filed a Consent to Jurisdiction of this Court and to entry of final orders and judgments on November 27, 2012 (Docket Entry 129). Prior to filing his Consent, he objected to this Court's jurisdiction and raised as an affirmative defense that this Court lacks: 1) constitutional jurisdiction as it is not an Article III court, 2) subject matter jurisdiction as it is not an Article III court, and 3) personal jurisdiction as it is not an Article III court.[1] He cites the "Anna Nicole case decided by the Supreme Court" in support of his objection and affirmative defenses regarding jurisdiction.[2] He provides no further argument or authority for his position.

The Court previously denied Friedlander's Motion to Dismiss for lack of subject matter jurisdiction (Docket Entry 55), finding that this is a core proceeding and that *Stern v. Marshall,* 131 S. Ct. 2594 (2011) *("Stern")* does not support his claim for dismissal. The Court finds that it does have constitutional, subject matter, and personal jurisdiction herein. Friedlander has formally consented to the entry of final orders and judgments by this Court, and he filed a Proof of Claim in the bankruptcy case. *Stern* held that the statutory grant of power to bankruptcy judges in 28 U.S.C. § 157(b)(2)(C) to hear and determine counterclaims filed by the estate against persons filing claims exceeds the limits of Article III of the Constitution. The Supreme Court's opinion specifically states that its holding is very narrow. The *Stern* decision does not question a bankruptcy court's authority to resolve issues raised in the claims allowance process that may be based upon state law claims.[3] This adversary concerns the validity, extent, and priority of liens, which is identified as a core

---

[1]Friedlander's claims regarding violations of other constitutional rights, RICO violations and for a writ of mandamus were dismissed per stipulation, *Docket Entry 107.*

[2]*See Docket Entry 28.*

[3]*Stern v. Marshall,* 131 S. Ct. at 2611 and 2618.

3

proceeding in 28 U.S.C. § 157(b)(2)(J); it does not involve a counterclaim under § 157(b)(2)(C). *Stern* did not find that a bankruptcy court's authority to determine the priority of lien claimants nor to resolve state law claims stemming from the bankruptcy or that would be resolved in the claims allowance process to exceed Article III.[4]

This Court also notes that Friedlander's previous challenges to the bankruptcy court's jurisdiction over him and certain funds of the estate were denied by the United States District Court for the District of New Mexico, Case No. CIV 07-414 BB/LAM.[5] Therefore, this Court finds that it has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## FINDINGS OF FACT

Fed. R. Civ. P. 56 requires parties to a motion for summary judgment to support their assertions regarding the presence or absence of genuine undisputed facts by citing to the materials in the record. Paragraph (e) of the rule allows a court to determine that the asserted facts are undisputed when there is a failure to properly address or support an assertion of fact. New Mexico Local Bankruptcy Rule 7056-1 also requires that a party disputing asserted material facts shall provide to the court a concise statement of the facts it contends are disputed with reference to the

---

[4]The Court notes that the United States District Court for District of New Mexico, Case 12-cv-752-MV-RHS, denied Plaintiff's Motion to Withdraw the Reference in another adversary case, 11-1042, on November 15, 2012. On the basis of that order, Plaintiff withdrew her Motion to Withdraw the Reference in this adversary case (*Docket Entry 122*, with *Order denying Motion to Withdraw the Reference* attached). Friedlander is a Defendant in Case No. 11-1042, which was also filed by the Chapter 7 Trustee to determine the validity, priority and extent of liens, and to object to Friedlander's Proof of Claim. In refusing to withdraw the reference on either mandatory or permissive standards, the District Court noted that adversary proceeding No. 11-1042 is a core proceeding that "is precisely the kind of issue that falls within the expertise of the bankruptcy court, and there is a strong preference for resolving core proceedings in the bankruptcy court." (*quoting In re Wahl*, 2012 WL 5199630, *3 (N.D. Okla. Oct. 22, 2012).

[5]Adversary Case No. 05-1149, *Docket Entry 158.*

record on which the party relies.

Friedlander argues that he cannot reasonably respond to Plaintiff's Motion for Summary Judgment, and that Plaintiff has not accurately set forth the facts nor applicable California law. However, he did not specifically dispute Plaintiff's statement of undisputed material facts, nor is his Response concise. Friedlander incorporated his Answer to Plaintiff's Complaint into his Response to the Motion for Summary Judgment. Both parties refer to Case No. 11-1042 for greater detail regarding Friedlander's lien claim to the proceeds of 53 La Vista: Plaintiff references it in her Complaint and Amended Complaint[6], and Friedlander references it in his Response. Thus, the Court has reviewed all of these pleadings, focusing on the allegations and responses specifically referencing Friedlander or his claim. Friedlander does not deny the specific allegations against him in the Complaint or Amended Complaint.[7] Instead he states that he preserved 53 La Vista for the estate, and that Debtor Jeffrey Potter ("Potter") never held record title from October 2003 to the present. As for Case No. 11-1042, the Court could not identify any discernible objection by Friedlander to the factual allegations regarding his claimed attorney lien, although he made many allegations against the parties - particularly, Plaintiff Trustee - and raised many objections regarding other matters.

Even if the Court could detect and extricate a denial or dispute of Plaintiff's asserted facts from Friedlander's various responses, Friedlander makes no reference to the record or to any materials, affidavits, discovery responses, etc., to establish the existence of a genuine dispute as to any material fact. Friedlander bases his claim on two Attorney-Client Retainer Agreements. His

[6]*Docket Entry 1*, Complaint, ¶ 43; *Docket Entry 74*, Amended Complaint, ¶ 47.

[7]These are primarily found in *Docket Entry 1*, ¶¶ 44 -77.

Response in this Adversary Proceeding purports to include a letter he faxed to Potter on June 29, 2003, regarding their retainer agreement but the Court cannot verify its authenticity and notes that it predates the two Attorney-Client Retainer Agreements. His only other references to materials in support of factual allegations are to the Retainer Agreements at issue, alleging that they were executed by all parties and filed "a multitude of times during the litigation in this case."[8] Therefore, in the absence of any legitimate challenge, the Court adopts the facts set forth in Plaintiff's Motion as undisputed and material.

Briefly, the essential facts are as follows: Potter filed a voluntary petition of bankruptcy under Chapter 11 on May 19, 2005. The case was converted to Chapter 7 on November 17, 2006, and Plaintiff was appointed as the Chapter 7 Trustee of Potter's bankruptcy estate (the "Estate").[9] Defendant Friedlander claims to have provided legal services and advanced costs to Potter prepetition. He asserts that he had attorney-client retainer contracts that granted him a lien on all settlement proceeds of the lawsuits he worked on for Potter, and that his lien continued to be secured by estate assets after Potter filed bankruptcy. Friedlander filed a Proof of Claim in the bankruptcy case on January 28, 2006, asserting a secured claim on real estate for costs and fees advanced and services performed in the amount of $ 236,307.52. Attached to his Proof of Claim are two Attorney-Client Retainer Agreements. One is an unsigned agreement with Potter in which Friedlander was to

---

[8]*See* Case No. 11-1042, *Docket Entry 50, ¶ 29.* The Court cannot take judicial notice of executed forms of the Retainer Agreements. None have been submitted in this bankruptcy case or related adversary proceedings.

[9]Case No. 05-14071, *Docket Entry 228.*

represent Potter in malpractice claims against an attorney named Engel ("Potter Agreement")[10].

Friedlander would be paid from funds collected from Engel or his malpractice carrier and have a lien

on all settlement proceeds. The second is with Mariana Danilovic, Trustee of the Legal Defense and

Maintenance Trust of California, for Friedlander and another attorney, Ben Silva, to represent Potter

and two LLCs in malpractice litigation against Engel and his law firm, and an appeal of judgment

("Trust Agreement"). The Trust Agreement is signed by Danilovic, Friedlander and Potter, but not

Silva. It provides that Friedlander would be paid from funds collected and have a lien on all

settlement proceeds and judgments involving the named clients. Plaintiff filed this adversary

proceeding on October 19, 2011, to determine the validity, extent, and priority of various claimed

liens on the proceeds of the sale of 53 La Vista. Plaintiff's Motion for Summary Judgment is only

as to Friedlander's lien claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.[11] Facts must be viewed in

the light most favorable to the nonmoving party "only if there is a 'genuine' dispute as to those

facts."[12] Since the Court has found the facts asserted by Plaintiff to be undisputed, there is no

genuine issue for trial. The issues before the Court consist of legal analysis and application. Thus,

---

[10]This Agreement uses the spelling "Engle." However, based upon other pleadings in this case, it appears that the correct spelling is "Engel." Therefore, the Court will use "Engel" unless quoting the Potter Agreement.

[11]Fed. R. Civ. P. 56(a).

[12] *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009) citing *Scott v. Harris*, 127 S.Ct. 1769 (2007).

summary judgment is appropriate.

## ANALYSIS

The issue in this matter is whether Friedlander holds a valid secured claim on 53 La Vista, or the proceeds of the sale of that property. The evidence cited to support Friedlander's claim consists of the two Attorney-Client Retainer Agreements attached to his Proof of Claim and to Trustee's Motion for Summary Judgment. The Court's task is to determine whether these agreements are valid and enforceable, what law should apply in interpreting the agreements, and whether they grant Friedlander a lien on 53 La Vista.

As best as this Court can determine, Friedlander's Response herein and position in all proceedings related to this bankruptcy is that he provided valuable legal services to Debtor Potter pre-petition, which in turn created or contributed to Potter's bankruptcy estate. Friedlander appears to argue that his labor and his Attorney-Client Retainer Agreements grant him a lien on all assets of the estate, thus making him a secured creditor under the Bankruptcy Code. He asserts that all opposition to his claim to be paid for those services is an unlawful and unfair attempt to deprive him of the fruits of his labor, services, and costs. While the Court is sympathetic to his plight, unfortunately his is a plight shared by many if not most of a debtor's creditors, business associates, family and friends. A "security," by definition, does not include a debt for services rendered.[13] The undisputed facts relevant to this adversary case do not support his claim that he has a valid security interest in the 53 La Vista property or in any proceeds from the sale of that property.

Both agreements dictate that California law shall apply to their interpretation, validity and enforcement, and the parties agree that California law applies. The Potter Agreement is a written

---

[13]11 U.S.C. § 101(49)(B)(vii).

but unsigned fee agreement between Friedlander and Potter. Friedlander admits that the version he submitted with his Proof of Claim is unsigned, but he declares that Potter did agree to its terms and sign it. In his Response, and in several telephonic hearings, he has explained that the signed version is likely in storage, along with his time records.[14] In other pleadings filed with the Court, Friedlander admits that he cannot produce a signed, executed copy of the attorney fee agreement and that such agreement is likely in storage.[15]

The essential elements of a contract under California law include consent by the parties to the terms of the agreement.[16] Consent to a written contract is generally recognized by parties' signatures to the agreement.[17] Plaintiff generously ignores the fact that the Potter Agreement is not signed by Potter, the party against whom it was to be enforced. (Plaintiff also notes that the Trust Agreement was not executed by all parties.) It is this Court's opinion that the Potter Agreement is not enforceable because there is no evidence that both parties consented to it. Nevertheless, the Court will accept - *for purposes of this matter only* - the premise that both Agreements are valid and enforceable contracts, and proceed to interpret and apply their terms.

Both of the parties agree that under California law, an attorney's lien is only created by

---

[14]*Docket Entry 108, pg 19*, time records "may be in storage" or "may be lost."

[15]Case No. 05-14071-TRC *Docket Entry 1048, page 4*, Friedlander's Position of Motion for Reconsideration and Engel's Motion to Approve Compromise: "The original signed and initialed agreement may be located in the dozens of boxes of files in storage or may be in possession of Potter. I have not spoken or communicated with Potter in years."

[16]West's Ann. Cal. Civ. Code § 1550.

[17]*See C. L. Smith Co., Inc. v. Roger Ducharme, Inc.*, 65 Cal. App. 3d 735, 742 (1977).

9

contract, not by the fact that an attorney has performed services for a client.[18] Both parties also agree

that an attorney charging lien in California attaches to the fund or judgment the attorney recovers for

his client.[19] The Court also agrees that these are correct statements of law to be applied to the Potter

Agreement and the Trust Agreement. Where the parties diverge is in the interpretation of these

Agreements regarding the property to which an attorney charging lien would attach. The pertinent

language of the Potter Agreement (dated August 13, 2003) is as follows:

> JEFFERY POTTER (hereinafter collectively referred to as "Client") hereby
> employs MARTIN S. FRIEDLANDER, ESQ.(herinafter "Attorney") as its attorney
> to represent Client in connection with all attorney malpractice claims against attorney
> ENGLE.
>
> ...
>
> Attorney shall be directly paid out of all funds collected from Engle or his
> malpractice carrier and shall have a "lien" on all settlement proceeds until paid in
> full.[20]

As Friedlander readily and correctly admits, the construction of a written fee agreement is

a judicial function governed by legal principles of contract interpretation.[21] This Court's review is

limited to, in Friedlander's words, "the entire 4 corners of the Agreement."[22] The language upon

which Friedlander bases his secured claim is simple and direct. Friedlander will represent Potter

to pursue malpractice claims against attorney Engel. To secure payment to Friedlander for his

services, Friedlander is granted a lien on settlement proceeds collected from Engel or his malpractice

---

[18]Both parties cite *Fletcher v. Davis*, 90 P.3d 1216 (Cal. 2004), in support of this
statement of California law.

[19]*Fletcher*, 90 P.3d at 1219.

[20]*Exhibit A, Friedlander's Proof of Claim.*

[21]*Sayble v. Feinman,* 76 Cal. App. 3d 509, 142 Cal. Rptr. 895 (Cal. App. 2d Dist. 1978).

[22]*Docket Entry 108, pg. 17.*

carrier. This language is clear that the Potter Agreement does not apply to any other lawsuits Potter

may have been involved in nor does it grant a lien on any assets other than the funds that are

collected from Engel through the malpractice litigation pursued by Friedlander on Potter's behalf.

The estate asset at issue in this adversary proceeding is proceeds from the sale of real estate,

53 La Vista. Friedlander has provided no evidence that this real estate is a proceed of the Engel

malpractice litigation. Neither the real estate nor proceeds from its sale were derived in any way

from a malpractice case against Engel. Friedlander has not disputed this, nor can he. Whether or

not this is unfair to Friedlander, Friedlander correctly points out that the fairness of a fee agreement

is not typically examined by hindsight. Although he argues that he performed valuable legal services

for which he has not been paid, this does not entitle him to nor allow the Court to award him a

secured claim. He must prove the validity of such a claim just as any other party claiming a security

interest.

His second basis for a secured claim is the Trust Agreement between himself and Mariana

Danilovic, Trustee of the "Legal Defense and Maintenance Trust of California," which is dated

October 4, 2003. The scope of Friedlander's representation under the Trust Agreement is set forth

as follows:

> to represent the following clients (Collectively referred to as "Client") (1) Jeffrey W.
> Potter, (2) Summit Valdes Business Park LLC, and (3) Summit Investment Company
> LLC in connection with all *pending* civil litigation against Client (Except for the
> Malpractice case pending against ...Engel and his law firm and the appeal from the
> Judgment in Favor of French & French. . . .[23]

(Emphasis added.)

The language relied upon to create a lien is found on page 4 of the Trust Agreement:

---

[23]*Exhibit B, Friedlander's Proof of Claim.*

"Attorneys shall be directly paid out of all funds collected, and shall have a 'lien' on all settlement proceeds and judgments until paid in full." Thus, as the Court held regarding similar language in the Potter Agreement, Friedlander's attorney charging lien is only on funds collected or proceeds recovered in the referenced lawsuits pursued by Friedlander on his named clients' behalf. It does not grant a lien on any other assets. Once again, the question is whether 53 La Vista is a proceed of litigation covered by the Trust Agreement.

As set forth in Plaintiff's Motion and supporting exhibits and Affidavit, her search of the New Mexico Courts Case Lookup website yielded four lawsuits regarding Potter that were pending at the time the Trust Agreement was signed. Of those lawsuits, only one involved 53 La Vista: *Bank of America v. Potter et al.,* Case No. #-101-CV-2003-01791. This was a foreclosure action on that property. According to the docket sheet in that case, Potter "paid the subject loan in full" and the case was dismissed on December 18, 2003.

To recover fees, Friedlander must have performed the contracted services. He is not noted as counsel on the Docket Sheet of the foreclosure action , in the Motion to Dismiss, Stipulated Order of Dismissal entered by the court, nor is he listed on the certificates of mailing of these documents.[24] He has provided no information to this Court as to any services he performed on behalf of Potter in this foreclosure action. He claims a "Security Interest" in the subject matter of several pieces of pending litigation, but he does not explain how the Trust Agreement grants him a lien on 53 La Vista, or how the dismissal of the foreclosure action is a "settlement proceed" or "fund collected"

---

[24]Friedlander would likely explain that this is because he was not admitted to practice in New Mexico. However, there is no reference to his co-counsel, Ben Silva, who was licensed in New Mexico. There is no evidence that either attorney performed services in the foreclosure action.

or "judgment" that is subject to the lien created by the Trust Agreement.

Assuming, however, that Friedlander did perform legal services in the foreclosure action, the question is whether the dismissal of the foreclosure action due to payment by Potter is a "proceed" of litigation subject to the attorney charging lien. The "lien" was only granted as to "settlement proceeds and judgments." The Court finds that this language is clear and explicit. Potter's payment of the mortgage was not a recovery, award or disbursement to him as a settlement or as a prevailing party in litigation. There is no judgment noted on the Docket Sheet, no reference to any award or recovery by him. It was simply to pay a debt Potter owed. Thus, it was not "proceeds" to which Friedlander's lien could attach.

The Court cannot adopt Friedlander's position that he has a lien on 53 La Vista because he took some unknown action to preserve that property for the bankruptcy estate or that his lien was somehow cross-collateralized by other property in which Potter may have had an interest. The Court understands that Friedlander has been involved in these matters for many years, but his arguments and explanations are ambiguous and obscure. They are unsupported by any specific facts or citation to legal authority. Thus, the Court finds that Friedlander does not have a valid security interest in 53 La Vista or the proceeds from its sale pursuant to the Potter Agreement or the Trust Agreement under California law.

Although the Court finds that Friedlander cannot prevail under California law, Plaintiff raised the issue of whether Friedlander could prevail under New Mexico law as the situs of the property. The Court agrees with Plaintiff that Friedlander cannot establish a secured claim under New Mexico law. Attorney's liens only attach to a "fund 'recovered by' the attorney."[25] The lien attaches to the

---

[25] *Sowder v. Sowder*, 977 P.2d 1034, 1037 (N.M. App. 1999) (citations omitted).

judgment or settlement fund, not against the client. If the attorney does not obtain a recovery for his client, he has no lien.[26] There is no evidence that Friedlander obtained a recovery for Potter in the foreclosure lawsuit in 2003 regarding 53 La Vista, nor a recovery in any other lawsuit covered by the Retainer Agreements. The dismissal of the foreclosure action due to payment cannot in any way be construed as a fund that was recovered, or the fruits of an attorney's skill and labor.

Finally, the Court must address Friedlander's claim that his verified Proof of Claim may not be defeated by Plaintiff's Affidavit and pleadings. A proof of claim is prima facie evidence of the validity of the claim but this does not render it unassailable. The supporting documentation to the proof of claim and the claim of a security interest must establish sufficient facts and legal liability of the debtor.[27] The Court is bound to review the supporting documentation of the asserted secured claim to determine whether such documentation is in fact valid and enforceable against Debtor. Evidence that the factual or legal basis for the claim is invalid may be submitted to challenge the claim. That is what Plaintiff did in this case. Friedlander has failed to refute it and he cannot prevail under the terms of the Potter Agreement, the Trust Agreement, or applicable law.

## CONCLUSION

For the above and foregoing reasons, Plaintiff's Motion for Summary Judgment against Friedlander is **granted**. Friedlander does not have a secured claim as to 53 La Vista nor to the proceeds from its sale.

A separate order granting summary judgment to Trustee shall be entered herewith.

---

[26]*Id.*

[27]*See* 11 U.S.C. § 502(b).

HONORABLE TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE
June 12, 2013

Entered on docket: 6/12/13

COPY TO:

Christopher M. Gatton
Attorney for Trustee Yvette Gonzales
10400 Academy NE, Suite 350
Albuquerque, NM 87111

Martin S. Friedlander
10350 Wilshire Blve, Suite 603
Los Angeles, CA 90024